Filed 6/30/26  P. v. Freisheim CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

| | |
|---|---|
| THE PEOPLE,<br>　　　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>CHARLES DEVANTE FREISHEIM,<br>　　　　Defendant and Appellant. | C102144<br><br>(Super. Ct. No. 62-192715) |

Defendant Charles Devante Freisheim was convicted of multiple domestic violence offenses against his girlfriend.  Defendant now appeals, arguing the trial court erred by denying his motion for mental health diversion under Penal Code[1] section 1001.36 by finding there was an unreasonable risk he would commit a super strike offense.  Defendant also argues he received ineffective assistance of counsel because his trial counsel failed to argue he should be allowed to question the victim about her pending probation violation and driving under the influence case based on his Sixth Amendment right to confront witnesses.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant and A.T. were in a relationship beginning in the summer of 2022 and lived together for about one year.  Within the first few months of their relationship,

---

[1]　　　　Undesignated statutory references are to the Penal Code.

1

defendant and A.T. fought for about four hours, during which he repeatedly choked her. Defendant occasionally let A.T. catch her breath before he "went back to it." At one point, A.T. ran out to her truck to try to leave, but defendant brought her back into the house by her hair and continued strangling her. As a result of this incident, A.T. urinated herself and had scratches on her chest and neck.

Around Christmas 2022, defendant wrapped his belt around A.T.'s neck and tightened it several times. When A.T. was begging him to stop, defendant told her, " 'Bitch, I will kill you and bury you in your own backyard' " and that he would kill her family. Defendant eventually strangled A.T. so badly she defecated, after which he continued to strangle her and smash her head against the bathroom wall.

In May 2023, defendant grabbed A.T. by her hair, threw her on the ground, and repeatedly punched her, fracturing her ribs.

Around June 2023, defendant swung his hand and hit A.T. in her left eye with his fist while they were eating in the car, causing a "huge[,] swollen black [and] red eye." Defendant then strangled A.T. periodically while driving and when they got home, leaving A.T. temporarily unable to breathe.

On July 8, 2023, defendant and A.T. got into a heated argument and shortly after, A.T. drove away. While A.T. was driving on the freeway, she saw defendant driving fast and swerving towards her. A.T. saw him near her truck for at least two exits until defendant exited the freeway.

Later at home, defendant and A.T. argued for about 10 minutes and A.T. told defendant, " 'You know you're not going to continue yelling at me and putting your hands on me anymore. I'm tired of it.' " In response, defendant threw his beer at her while saying " '[f]uck you,' " put his fingers down her throat for about one or two minutes, and head-butted her into a wall. The back of A.T.'s head hit the wall, and A.T. ran away yelling for help. A.T. was in a panic, scared, and wanted to get away, and defendant was yelling and chasing her.

2

As A.T. was running, defendant tackled her to the ground and her wrist hit the asphalt as she put her arms out. Defendant scraped his knee and A.T. scraped her wrists from the fall, but A.T. got up and ran. Defendant began yelling: " 'I will find you. I will have my people come find you and kill you.' " A.T. eventually made it to a neighbor's house and called 911.

When deputies arrived at the neighbor's house, A.T. told them what happened that evening and about her previous injuries caused by defendant. A deputy observed an alcohol odor on A.T.'s breath and red, watery eyes that could have indicated alcohol consumption or crying, but A.T. denied drinking that day.

Defendant texted A.T. that night stating, " 'I'm going to jail bro rat Park Beach called the cops on me.' " A minute later, he texted her, saying, among other things, " 'I'm just going to kill her dude and get it over with -- get it done with.' " A.T. believed that defendant meant to send these text messages to somebody else but sent them to her instead. Ten minutes later, defendant texted A.T. accusing her of injuring his knee with a hammer and drinking too much, which she viewed as defendant's way of covering up his actions because there was never a hammer in any of their disputes.

In July 2023, the prosecution charged defendant with multiple domestic violence offenses. The trial court also issued an emergency protective order. Defendant tried calling A.T. from jail, in violation of the protective order, though she did not answer.

The prosecution later filed an amended information charging defendant with criminal threats, dissuading a witness by force or threat, two counts of corporal injury to a dating partner, and misdemeanor disobeying a domestic relations court order. The information also alleged multiple aggravating circumstances and alleged defendant had three prior strikes and three prior serious felony convictions.

# I

*Motion For Mental Health Diversion*

Before trial, defendant moved for mental health diversion, relying primarily on the report of Dr. Marine Jakubowski, who evaluated defendant to assess his mental status and competency to stand trial. In Dr. Jakubowski's report, she noted defendant's report of repeatedly reliving traumatic events via dreams, mental images, and flashbacks and "loss of interest and pleasure in once joyous activities," and she diagnosed defendant with posttraumatic stress disorder and major depressive disorder with psychotic features. Dr. Jakubowski reported that defendant's mental disorder played a significant role in the commission of the charged offense, his symptoms that motivated his criminal behavior would respond to mental health treatment, and defendant agreed to comply with the treatment. Dr. Jakubowski also stated defendant was currently not a danger to himself or others, based on his relatively stable mood and no recent "acting out behaviors." She acknowledged defendant's history of criminal behavior but noted he had minimal substance use after completing parole and had continually engaged in mental health treatment.

The prosecution opposed the motion for mental health diversion. The prosecution noted the various incidents of threats and violence against A.T. and also defendant's prior domestic violence cases with other victims. Specifically, the prosecution detailed a 2011 incident involving defendant's ex-girlfriend where he threatened to kill her in front of their three-year-old daughter. The ex-girlfriend reported defendant hit her five times in five years, leading to bruising on her face, neck, and eyelid. She also stated defendant had smashed her car and thrown things around in the past, and defendant had threatened to kill her about 10 times. The prosecution also discussed a 2012 incident involving another victim where defendant tackled, strangled, and threatened to kill the victim.

The prosecution also noted defendant's extensive criminal history, which began in 1992 and included 12 misdemeanor convictions and 13 felony convictions, including for

corporal injury on a spouse/cohabitant, first degree burglary, evading a peace officer, possession of a firearm without an identification mark, threat with intent to terrorize, felon in possession of a firearm, and prohibited possession of ammunition. Defendant also violated parole three times and was also convicted of a postrelease community supervision violation.

The prosecution argued the mental health disorder did not play a significant role in the current offenses. The prosecution also argued defendant's escalating violence towards A.T. and his criminal history demonstrated an unreasonable risk of danger to public safety. The prosecution asserted that Dr. Jakubowski's report only included defendant's version of the events, which was inconsistent with A.T.'s version and her injuries, and that defendant had made threats to kill a previous partner in the past. The prosecution also noted A.T.'s statement that defendant's strangulation was an ongoing behavior and escalating in frequency, which showed defendant was likely to commit a super strike of murder, especially in light of evidence that nonfatal strangulation is an important risk for homicide in women. The prosecution also argued that, due to defendant's history of domestic violence and convictions for criminal threats, firearm possession, and evading law enforcement, defendant posed a significant risk not only to the victim in this case, but to public safety.

The trial court found defendant was eligible for mental health diversion. The trial court also found defendant had met most of the elements of suitability for diversion except his risk to public safety. The trial court noted it considered the arguments of counsel, Dr. Jakubowski's report, defendant's proposed treatment plan, defendant's violence and criminal history, the current charged offense, and mitigating circumstances identified by defendant. The court noted "defendant's criminal record extending over 30 years, multiple crimes of violence, domestic violence situations, convictions involving weapons, resisting arrest, battery, burglary and the prison term served by defendant in multiple cases," and "the testimony of the victim regarding the circumstances of the

present offenses as well as her testimony regarding ongoing and escalating physical abuse perpetrated by defendant, including repeated strangulations and assaults leading to serious injuries including fractured ribs, [a] fractured foot, and [a] black eye."[2] Based on all the factors, the court stated it was "not satisfied that defendant would not pose an unreasonable risk of danger to public safety within the meaning of [s]ection 1170.18 if released into the community on diversion" and thus defendant was not suitable for diversion given the risk of danger to public safety.

## II

### *Trial*

At trial, A.T. testified at length regarding her interactions with defendant, including the events on July 8, 2023. She admitted she had issues with alcohol and drank half of a 24-ounce beer on July 8, and she did not initially tell the police this because she was on probation and not supposed to drink. Defense counsel impeached her with her preliminary hearing testimony that she had not been drinking that day. When the court learned that A.T. was still on probation and also had a pending driving under the influence case, it advised her of her right to remain silent and appointed counsel.[3] Her counsel then advised her to invoke her Fifth Amendment right on any line of questioning regarding alcohol, usage of alcohol, or pending cases.

Counsel for defendant then explained to the trial court that he wanted to also question A.T. about at least seven other incidents where A.T. was drinking and driving or defendant had to stop her from drinking and driving, and it was the "core" of the defense

---

[2]     The trial court later issued a written order in accord with its oral ruling but also specifically found, among other things, that defendant's physical abuse against A.T. increased in volume and intensity over time.

[3]     The court's discussion regarding A.T.'s right to counsel occurred in part at sidebar and in part outside the presence of the jury.

6

that on July 8 defendant was trying to stop A.T. from drinking and driving. The court noted that A.T. had already testified that she lied to the officer about her not drinking because she was on probation, and verified with A.T.'s counsel that A.T. was going to invoke her Fifth Amendment privilege regarding any questions about her drinking on July 8. In response, defense counsel requested that A.T. "be ordered to answer the questions. [Defense counsel] believe[d] enough information ha[d] already come out where [A.T.] need[ed] to answer them." The court denied the request, ruling: "[I]f she invokes her Fifth Amendment right -- she's on probation, she has a pending [driving under the influence] case -- I would allow her to invoke her Fifth Amendment right. … I'm not going to make her incriminate herself." However, the court ruled that she would have to invoke her Fifth Amendment right.

When cross-examination resumed, defense counsel questioned A.T. as to whether the reason she and defendant argued on July 8 was because defendant did not want her to drink and drive that day. In response, A.T. invoked her privilege against self-incrimination. She had the same response to defense counsel's questions regarding drinking and driving on several other occasions during the relationship.

Defendant testified and denied threatening or assaulting A.T. on July 8 or previously, claiming he was trying to prevent her from drinking and driving and she became angry and violent when she would drink. He claimed he confronted A.T. about drinking on July 8 after finding two empty alcohol bottles in the bathroom and followed her in his car because he was afraid she would hurt herself or get pulled over. He saw her trip over her own feet outside and fall, and while he was unplugging spark plug wires from her truck so she would not be able to drive it, A.T. ran up and hit his knee with a hammer. He admitted calling A.T. on July 12, 2023, in violation of the protective order.

A jury found defendant guilty of criminal threats, both counts of corporal injury to a dating partner, and disobeying a domestic relations court order and not guilty of dissuading a witness by force or threat. Defendant later admitted the prior strike

convictions and the prior serious felony convictions, and the trial court found the alleged aggravating circumstances to be true.

At sentencing, the trial court denied defendant's motion to strike his prior strike convictions but granted his request to dismiss the serious conviction priors in the interest of justice. The court sentenced defendant to 25 years to life for the criminal threats count; the upper term of four years for one of the corporal injury counts, doubled to eight years due to the strike; and one year for the other corporal injury count (one-third of the middle term), doubled to two years due to the strike, all running consecutively. The trial court imposed a concurrent 30-day sentence for the misdemeanor disobeying a domestic relations court order conviction.

Defendant appeals.

## DISCUSSION

Defendant argues the trial court abused its discretion by denying mental health diversion because substantial evidence does not support the trial court's finding he posed an unreasonable risk to public safety. Defendant also argues his trial counsel committed ineffective assistance of counsel by failing to argue he should be permitted to question A.T. regarding her probation violation and pending driving under the influence case based on his right to confront witnesses.

### I

*The Court Did Not Abuse Its Discretion By Denying Mental Health Diversion*

If a defendant meets the eligibility requirements for mental health diversion in section 1001.36, subdivision (b), then "the court also must find that the defendant is suitable for pretrial diversion based on satisfaction of the following criteria: '(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment. [¶] (2) The defendant consents to diversion and waives the defendant's right to a speedy trial …. [¶] (3) The defendant agrees to comply with

8

treatment as a condition of diversion ….  [¶]  [and] (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in [s]ection 1170.18, if treated in the community.' "  (*People v. Graham* (2024) 102 Cal.App.5th 787, 795.)

Only the last of these criteria is at issue here.  An " 'unreasonable risk of danger' " to public safety means " 'an unreasonable risk that the [defendant] will commit a new violent felony' within the meaning of section 667, subdivision (e)(2)(C)(iv)."  (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149.)  Under the statute, the violent felonies that may be relevant here are any homicide offense, including attempted homicide.  (§§ 1001.36, subd. (c)(4), 1170.18, subd. (c), 667, subd. (e)(2)(C)(iv); see also *People v. Moine* (2021) 62 Cal.App.5th 440, 449.)  In making this decision, the trial court "may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate."  (§ 1001.36, subd. (c)(4).)

We review a trial court's ruling on a motion for pretrial mental health diversion for abuse of discretion.  (*People v. Graham*, *supra*, 102 Cal.App.5th at p. 795.)  "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence."  (*People v. Moine*, *supra*, 62 Cal.App.5th at p. 449.)

Applying this standard, we conclude the trial court did not abuse its discretion by determining defendant posed an unreasonable risk of committing a super strike offense.  As noted by the trial court, defendant has an extensive criminal record extending over multiple decades, including multiple crimes of domestic violence, weapons convictions, and convictions for resisting arrest, battery, and burglary.  Defendant also made several threats against A.T. and other victims and inflicted serious injuries upon them, including strangulation and putting his fingers down A.T.'s throat, actions which pose a significant

9

risk of death. Importantly, defendant threatened to kill A.T. several times. Defendant's convictions for resisting arrest, parole and supervision violations, and violation of the protective order also tend to suggest defendant would not comply with any conditions imposed by the trial court or any treatment provider.

While the examining psychologist recommended treatment in a community setting, the trial court was not bound by this recommendation. Although experts may provide their opinions, "the fact finder decides what weight to give those opinions." (*In re Scott* (2003) 29 Cal.4th 783, 823.) The trial court's determination that defendant posed an unreasonable risk of danger to the public was supported by substantial evidence.

## II

### *Defendant Has Not Shown Ineffective Assistance Of Counsel*

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) We review trial counsel's performance with deferential scrutiny, "indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and recognizing the many choices that attorneys make in handling cases and the danger of second-guessing an attorney's decisions. (*People v. Maury* (2003) 30 Cal.4th 342, 389; see *Strickland*, at p. 689.) On direct appeal, relief will be granted "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Defendant argues his trial counsel's representation was deficient for failing to argue his right to confrontation was violated by not being allowed to question A.T. about

the fact she had both a pending probation violation and a pending driving under the influence case.

Defendant has not shown his trial counsel's performance fell below an objective standard of reasonableness or that counsel's omission had no rational tactical purpose. (See *People v. Mai*, *supra*, 57 Cal.4th at p. 1009.) As an initial matter, the trial court did not prohibit defendant from asking A.T. about her probation violation or pending driving under the influence case. Rather, the court ruled it would allow A.T. to invoke her Fifth Amendment privilege against self-incrimination, in front of the jury, in response to questions about alcohol use or pending cases. In light of that ruling, defendant's trial counsel may have reasonably concluded it would be futile to further argue A.T. should be ordered to answer questions about her pending cases, specifically to protect his client's confrontation rights under the Sixth Amendment. Indeed, defendant's trial counsel requested that A.T. be ordered to answer the questions, and the trial court explained in response that it would not make A.T. incriminate herself.

Further, trial counsel may have determined further argument was unwarranted because the jury already heard (1) A.T. was on probation and knew she was not supposed to drink, but had been drinking on July 8; (2) A.T. had lied during the preliminary examination when she said she had not been drinking on July 8; and (3) A.T.'s repeated invocation of the Fifth Amendment when questioned about other episodes of alleged drinking and driving, calling into doubt her credibility before the jury.[4] Defense counsel also questioned the responding deputy and defendant about A.T.'s alcohol use on July 8 and at other times. Defendant has not shown his trial counsel's failure to specifically raise defendant's confrontation right had no rational tactical purpose.

---

[4]    Because defendant has not established that his trial counsel's performance fell below an objective standard of reasonableness, we do not address whether he has shown prejudice under *Strickland v. Washington*, *supra*, 466 U.S. 668.

11

DISPOSITION

The judgment is affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
FEINBERG, J.

/s/
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12